## United States District Court
### District of Nebraska

| | |
|---|---|
| **Organization for Competitive Markets, Inc.,** **Ogallala Livestock Markets, Inc., and** **Torrington Livestock Markets, LLC,** | **Case No. _____** **Judge: _____** **Magistrate:_____** |
| **Plaintiffs,** | |
| **v.** | **Complaint for Injunctive and Declaratory Relief** |
| **United States Department of Agriculture, an agency of the United States of America, and Grain Inspection Packers & Stockyards Administration, an agency of the USDA,** | |
| **Defendants.** | |

The Plaintiffs, Organization for Competitive Markets, Inc., Ogallala Livestock Market, Inc., and Torrington Livestock Markets, LLC, bring this action for injunctive and declaratory relief against the United States Department of Agriculture (USDA) and the Grain Inspection Packers & Stockyards Administration (GIPSA). The USDA is unlawfully prohibiting Plaintiffs from entering into private contractual relationships among themselves to engage in a producer-sponsored program funded by voluntary cattle producer contributions to enhance demand for live cattle and beef at the packer and retail level in open and competitive markets without restriction by the USDA. Plaintiffs seek injunctive and relieve preventing USDA and GIPSA from preventing these producer self help activities. Further, plaintiffs seek an order declaring that USDA and GIPSA have no jurisdiction over these private contractual relationships.

### Parties

1.     Plaintiff, Organization for Competitive Markets (OCM), is a Mississippi corporation with its principal place of business in Hickman, Nebraska, located in Lancaster County. OCM is a nonprofit, charitable organization within the

meaning of section 501(c)(3) of the Internal Revenue Code. OCM's activities include research, education, communication and advocacy on behalf of agricultural producers of all commodities primarily within the field of competition and trade regulation law and policy. OCM's membership and activities are national in scope and its members are primarily producers of agricultural commodities from across the country.

2.    Plaintiff, Ogallala Livestock Market (Ogallala), is a Nebraska corporation located in Ogallala, Nebraska in Keith County. Ogallala provides a market, facilities and services to sell livestock, primarily cattle, on behalf of customers or consignors to buyers. It is a market agency within the meaning of the Packers & Stockyards Act (PSA) section 7 USC § 201(c). Ogallala provides substantial services to its customers including selling, sorting, and identifying cattle through matching the proper cattle with willing buyers.

3.    Plaintiff, Torrington Livestock Markets, LLC, (Torrington) is Wyoming limited liability company located in Torrington, Wyoming. Torrington provides a market and facilities and services to sell livestock, primarily cattle, on behalf of customers or consignors to buyers. It is a market agency within the meaning of the Packers & Stockyards Act (PSA) section 7 USC § 201(c). Torrington provides substantial services to its customers including selling, sorting, and identifying cattle through matching the proper cattle with willing buyers.

4.    The Defendant, United States Department of Agriculture (USDA), is a cabinet level department of the United States executive department pursuant to 7 USC § 2202. It carries out certain regulatory duties relating to livestock markets under the PSA through its subagency, the Grain Inspection, Packers & Stockyards Administration (GIPSA). USDA's primary Nebraska presence is in Lincoln, Nebraska in Lancaster County.

## Jurisdiction and Venue

5.    This Court has subject matter jurisdiction over this action pursuant to 28 USC §1331 (federal question jurisdiction); § 1346 (United States as defendant); and may issue a declaratory judgment under 28 USC §§ 2201 and 2202.

2

6.    Venue is proper in this Court under 28 USC § 1391(e) because the Plaintiffs reside in Nebraska, the Plaintiffs' principal places of business are in Nebraska, and the defendant is an agency of the United States with a Nebraska presence.

### Facts

7.    OCM engages in research, education, communication and advocacy towards the goal of achieving an agricultural market structure in many commodities, including live cattle, that are competitive, reflective of supply and demand factors, and free from improper and unlawful conduct by large, concentrated, global buyers, such as multinational slaughterhouses, grain processors and retail supermarket chains that interfere with supply and demand.  Such conduct often artificially reduces demand for food and fiber products grown or raised by farmers and ranchers, including OCM members.

8.    In carrying out its mission, OCM produces white papers, books, journal articles, press releases, and otherwise creates and distributes information within the scope of its mission to agricultural producers, the general media, and consumers about supply and demand problems in all agricultural markets.  OCM holds informational conferences and advocates market practices and policies that will tend to produce competitive markets without artificial reductions in demand arising from unfair market practices.

9.    The primary customers for OCM's cattle producing members are meat packers and slaughterhouses.  The secondary level customers for OCM's cattle producing members are retail supermarkets which buy meat from meat packers.  The tertiary level customers for OCM's cattle producing members are individual consumers who buy retail beef from supermarkets.

10.    In December 2002, OCM created a program whereby cattle producers across the country could easily and voluntarily contribute a small portion of the proceeds from each sale of cattle to a fund for the purpose of furthering their interests in increasing demand for their cattle in fair, open and competitive markets at the slaughterhouse and retail supermarket levels.  The project was and is entitled the

Cattlemen's Competitive Market Project (CCMP). CCMP does not carry out general OCM activities, but only activities relating to the aforementioned mission in the cattle sector.

11.    A governing council, known as the CCMP Council, was created consisting of ranchers, cattle feeders and livestock auction market operators from Nebraska, Montana, South Dakota, Wyoming, Colorado, Kansas and Missouri. CCMP has received endorsements from major organizations that represent the cattle industry including Nebraska Livestock Marketing Association (representing Nebraska auction markets), Ranchers-Cattlemen Action Legal Fund, United Stockgrowers of America (representing approximately 9,000 cattle producing members and 58 local and state cattle and farm organizations nationally); Montana Cattleman's Association (representing Montana cattle producers); Kansas Cattlemen's Association (representing Kansas cattle producers); South Dakota Stockgrowers Association (representing South Dakota cattle producers); Missouri Stockgrowers Association (representing Missouri cattle producers); and Oregon Livestock Producers Association (representing Oregon livestock producers). CCMP Council members come from these cattle organizations.

12.    An Academic Advisory Committee was created to advise CCMP on research priorities. The Academic Advisory Committee consists of Dr. Neil Harl, conomist and agricultural law professor from Iowa State University; Roger McEowen, agricultural law professor from Kansas State University, Dr. Ronald Cotteril, industrial organization economist from the University of Connecticut; and Peter Carstensen (antitrust professor at the University of Wisconsin.

13.    An Attorney Advisory Committee was created to advise CCMP on legal issues involved with competition problems that artificially reduced demand for live cattle and beef in the industry. The Attorney Advisory Committee consists of Joseph Whatley of Birmingham, Alabama; Herbert Schwartz of Houston, Texas; Sarah Vogel of Bismark, North Dakota and David Domina of Omaha, Nebraska.

14.    Individual cattle owners, cattle feedlots, and livestock auction markets have entered into contracts with OCM to either contribute voluntarily to the

4

CCMP fund or, in the case of commercial feedlots and livestock auction markets, provide the opportunity for their customers to contribute voluntarily.

15.    All voluntary contributions are deposited into a separate account, and are spent for the purpose of administering and carrying out the goals of CCMP through research, communication and education projects.   Grants to outside entities are voted upon and approved by the Council.   Contracts with outside entities and organizations contain requirements that budgets be submitted to CCMP for evaluation, funds are spent in accordance with approved CCMP projects, and independent audits are conducted annually.

16.    In June 2003, the Nebraska Livestock Market Association (NeLMA) endorsed CCMP.   Thereafter, NeLMA distributed information about CCMP to its member markets.   Four Nebraska markets, including Ogallala, undertook a series of actions to inform their customers about CCMP and provide those customers with an opportunity to sign up for contribution to the CCMP fund.

17.    In October 2003, OCM entered into a private contract with Ogallala by which Ogallala would provide its customers the opportunity to voluntarily contribute to CCMP activities through a voluntary collection program in which customers would contribute unless they chose not to do so.   In return, OCM agreed to use said funds to provide benefit to cattle producers in a manner consistent with the CCMP mission.   On December 1, 2003, Ogallala implemented the CCMP contribution program.

18.    In February 2004, OCM and Torrington entered into a contract with identical rights and obligations as the Ogallala contract.   Torrington implemented the CCMP program pursuant to that contract on March 1, 2004.

19.    Torrington and Ogallala implemented the CCMP program through a series of procedural steps, including

a.    Informing their customers about the project, its goals and objectives to better the industry through posted notices and mailings;

5

     b.    Posted notices in the auction market as to the CCMP program start date wherein customers will have an additional 50 cents taken out of their checks per head;

     c.    Providing customers with the opportunity to choose not to contribute prior to CCMP implementation through notifying the auction market orally or in writing;

     d.    Notifying customers in the post-implementation period of the deduction with a separate and conspicuous notification sent with each livestock payment check; and

     e.    Providing the opportunity for customers to choose not to contribute at any time for the purpose of receiving their last contributions back and never contributing again in the future.

20.    Approximately 25% of customers at Ogallala and Torrington have chosen to not contribute and will not contribute in the future without affirmative notification otherwise. The majority of producers have chosen to continue contributing to CCMP to receive its benefits.

21.    In April 2004, the National Cattlemen's Beef Association (NCBA), upon information and belief, sent a letter to USDA-GIPSA asking the agency to halt the CCMP program in auction markets. NCBA is an advocacy association with members including cattle producers, slaughterhouses, importers and other industry persons or entities. NCBA often differs ideologically with OCM's efforts to promote competitive markets.

22.    NCBA is the primary contractor receiving tens of millions of dollars from the Cattlemen's Beef Promotion and Research Board (Beef Board). The Beef Board receives more than $70 million dollars per year from a mandatory cattle checkoff program that is currently being challenged by cattle producers at the United States Supreme Court level.

23.    Many USDA political appointees are former NCBA employees. Dale Moore, the chief of staff to the Secretary of Agriculture, was formerly NCBA's

chief lobbyist. Chuck Lambert, Deputy Undersecretary for Marketing and Regulatory Programs, was formerly NCBA's chief economist and now oversees GIPSA, among other agencies. Alisa Harrington, USDA's Acting Director of Communications, was formerly NCBA's press secretary. Donna Reifschneider, Administrator of GIPSA, was formerly president of the National Pork Producers Council which also receives tens of millions of dollars in mandatory pork checkoff funds from producers as a primary contractor to the Pork Board. NPPC has a very close relationship with NCBA.

24.    On May 3, 2004, Mr. Harold Schaaf, an field agent for USDA-GIPSA, under instructions by USDA-GIPSA superiors, called Torrington Livestock Markets stating that the market should not be collecting CCMP voluntary contributions.

25.    On May 4, 2004, OCM sent a letter to USDA-GIPSA explaining that the agency has no jurisdiction over such voluntary contributions and stated that it has no authority to interfere with the private contractual relationships involved with CCMP. OCM also pointed out that the Deputy Administrator for GIPSA had sent a letter to the Livestock Marketing Association, an industry association representing livestock auction markets, on September 29, 2003 stating that the CCMP program met all the requirements of 7 USC § 228(b) and 9 CFR § 201.39(a) which provides that USDA has no jurisdiction over such funds.

26.    On May 24, 2004, OCM received a letter from USDA-GIPSA stating that the agency had changed its position and had determined that it will assert jurisdiction over such funds, that 7 USC 228(b) does not apply, and that any auction market that engages in a CCMP contract, such as Torrington and Ogallala, is in violation of the Packers & Stockyards Act.

27.    Also on May 24, 2004, USDA-GIPSA field officer Harold Schaaf called Torrington and Ogallala instructing them to stop complying with the CCMP agreement and stop collecting voluntary producer contributions.

28.    On May 25, 2004, OCM general counsel Michael Stumo called USDA-GIPSA Deputy Administrator JoAnn Waterfield to protest the action. Waterfield stated that the basis for USDA's decision is that:

    a.    CCMP must be a statutory or legislated checkoff to comply with the 7 USC 228(b) or 9 CFR § 201.39(a); and

    b.    CCMP does not carry out research, promotion and education activities that fall within that statute despite her previous letter stating otherwise.

29.    USDA's actions have effectively nullified the contractual relationships between OCM and Plaintiffs Torrington and Ogallala. Plaintiffs wish to continue engaging in CCMP activities to benefit the cattle industry through voluntary contributions by producers who agree with these activities to enhance demand for live cattle and beef in fair, open, and competitive markets at the packer and retail supermarket levels.

30.    Further, USDA's actions are causing irreparable harm to OCM in that the contributions that have been lost each day will are not recoverable. No money damages can be achieved in a suit of this type where the government is defendant. Further, USDA's actions have jeopardized the viability of CCMP in that promises made to contributors are not being carried out in a manner that is effective to serve their interests. This has caused significant harm to reputation of OCM and its future ability to carry out the mission and goals that it promises to contributors.

31.    Plaintiffs seek this court's determination that USDA is unlawfully interfering with their contractual relationships and that CCMP activities are outside the purview of USDA authority.

**<u>Request for Relief</u>**

On the foregoing basis, Plaintiff respectfully requests that this Court:

32.    Enter judgment declaring that CCMP activities are outside the purview of USDA authority pursuant to 7 USC § 228(b).

33.    Enter judgment declaring that 7 USC § 228(b) does not allow USDA to assert conditions on CCMP voluntary contributions.

34.    Enter judgment declaring that USDA's actions constitute a final agency action that is arbitrary, capricious, an abuse of discretion, and otherwise not in

accordance with the law pursuant to the Administrative Procedures Act, 5 USC § 706(2)(a).

35.    Enter judgment declaring that the USDA-GIPSA position that only statutory checkoffs fall within the purview of 9 CFR § 201.39 is a final agency action constituting a regulatory change that is in violation of the Administrative Procedures Act, 5 USC § 706(2)(d) because it was taken without observing the procedures of the Act.

36.    Grant a preliminary injunction enjoining USDA-GIPSA from engaging in any conduct to prevent the Plaintiff auction markets from collecting voluntary CCMP contributions in accordance with their contractual arrangement with OCM.

37.    Permanently enjoin USDA-GIPSA from implementing or enforcing its decision that auction markets that participate in the CCMP program are violating the Packers and Stockyards Act.

38.    Award plaintiffs their costs and attorneys fees in this action; and

39.    Grant such further relief as the Court deems proper and just under the circumstances.

### Request for Trial

40.    Plaintiffs respectfully designate Lincoln, Nebraska as the place for trial.

July 1, 2004.

Organization for Competitive Markets, Ogallala Livestock Markets, and Torrington Livestock Markets, LLC, Plaintiffs,

By: _____

David A. Domina, #11043
James F. Cann, #21458
DOMINALAW pc
2425 S. 144th St.
Omaha, NE  68144-3267
(402) 493-4100

*Attorneys for Plaintiffs*